IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

In re: DIRECT GENERAL CORP.          )  NO. 3:05-0077
SECURITIES LITIGATION                )  JUDGE CAMPBELL
                                     )
                                     )

## MEMORANDUM

Pending before the Court are the following Motions: Motion to Dismiss of Defendant Direct General Corp. and the Individual Defendants (Docket No. 106); Motion to Dismiss of Defendants William C. Adair, Jr. Trust and Tammy Adair, Trustee (Docket No. 108); Motion to Dismiss of Defendant Ernst & Young, LLP (Docket No. 130); Motion to Dismiss of the Underwriter Defendants (Docket No. 133); Motion for Hearing of Underwriter Defendants (Docket No. 137); Motion for Oral Argument of Lead Plaintiffs (Docket No. 148); Motion to Strike of Lead Plaintiffs (Docket No. 150); and Motion by Defendant Direct General and the Individual Defendants for Judicial Notice (Docket No. 164).

## FACTS[1]

This action is a securities class action on behalf of all purchasers of the securities of Direct General Corporation between August 11, 2003 and January 26, 2005. Direct General is a financial services holding company whose principal operating subsidiaries provide non-standard personal automobile insurance, term life insurance, premium finance and other consumer products and

---

[1] Unless otherwise noted, these facts are taken from the Consolidated Amended Complaint (Docket No. 77).

services. Plaintiffs allege that Defendants caused Direct General's shares to trade at artificially-inflated levels through the issuance of false and misleading statements.

Plaintiffs contend that Defendants knew and failed to disclose (or were reckless in not knowing) that Direct General was exposed to increased liability associated with the 2003 Florida Insurance Affordability Act ("FIAA"), related to personal injury protection coverage, and that Direct General maintained inadequate loss reserves necessary to address its increased liability. Plaintiffs aver that, in August of 2003, Defendants caused Direct General to complete a public offering which raised $167 million without informing investors that Direct General's claims expenses would necessarily increase due to the FIAA. Plaintiffs also assert that, in March of 2004 and again in November of 2004, Direct General insiders and Defendant William C. Adair, Jr. Family Trust pocketed hundreds of millions of additional dollars through the direct sale of additional shares at artificially-inflated prices.

Plaintiffs claim that, during the relevant time period, Defendants made false and misleading statements in Direct General's August 2003 Registration Statement, public reports, press releases, conference calls, Fourth Quarter 2003 10-Q report, yearly 2003 10-Q report, March 2004 Registration Statement, First Quarter 2004 10-Q report, Second Quarter 2004 10-Q report, and Third Quarter 2004 10-Q report.

Plaintiffs assert that Defendants misrepresented the truth by stating that Direct General's business *could* be affected by *conditions* in Florida, when it knew that its business *would* be negatively affected by the FIAA. Plaintiffs allege that Defendants' statements were misleading because they failed to explain that the FIAA would necessarily require Direct General to increase its loss reserves and would negatively affect its business in Florida. Plaintiffs contend that

2

Defendants misrepresented the truth by stating that Direct General's loss ratio and loss reserves set aside for policies written in Florida were adequate. Plaintiffs assert that Defendants misled the public by stating that the increase in claims frequency in Florida was generally attributable to increased fraud activity in the Miami market, when, in truth, it was primarily because of the change in Florida law. Plaintiffs argue that Defendants misled the public by stating that adverse regulatory developments in Florida *could* include reductions in the maximum rates permitted to be charged, when Defendants knew that Direct General's reserves were being negatively impacted by the law. As a result of all these false and misleading statements, Plaintiffs claim, Direct General's financial statements during the end of 2003 and all of 2004, including earnings and net income, were false. Plaintiffs aver that the prices for Direct General's stock were pushed artificially higher by Defendants' false and misleading statements.

Plaintiffs allege that on January 26, 2005, Defendants finally revealed that, primarily because of the FIAA, Direct General would be required to increase its reserves by $11 million. Plaintiffs claim that, as a result of this announcement, stock of Direct General plummeted more than 31% the next day, and stock analysts began to downgrade Direct General's ratings. Plaintiffs assert that, on February 28, 2005, Direct General was notified that the SEC had begun an inquiry into the Company's loss reserves and its failure to adequately account for the impact of the FIAA.

Plaintiffs' Consolidated Amended Complaint ("the Complaint") alleges causes of action for (1) violation of § 10(b) of the 1934 Exchange Act and Rule 10b-5 against Direct General, the Insider Defendants and Ernst & Young; (2) violation of § 20(a) of the 1934 Exchange Act against Direct General and the Insider Defendants; (3) violation of § 11 of the 1933 Securities Act against William Adair, Jacqueline Adair, Elkins, Medling, Osterhout, Rohde, the Underwriter Defendants and Ernst

& Young; (4) violations of § 12(a)(2) of the 1933 Securities Act against Direct General, William Adair, Tammy Adair individually and as Trustee of the Adair Family Trust, Jacqueline Adair, Elkins and the Underwriter Defendants; and (5) violation of § 15 of the 1933 Securities Act against William Adair, Tammy Adair, Jacqueline Adair, and Elkins.

All Defendants have filed Motions to Dismiss, and each will be discussed in turn. Plaintiffs have filed a Motion to Strike Defendants' exhibits, to which Defendants Direct General and the individual Defendants responded with a Motion for Judicial Notice.

MOTION TO STRIKE/MOTION FOR JUDICIAL NOTICE

Plaintiffs have moved to strike Appendices 1, 2, 7, 8, 11, 12, 14 and 17 filed by Defendant Direct General and the Individual Defendants and the chart on page 15 of Defendants' Memorandum (Docket No. 107). Plaintiffs have also moved to strike Exhibits 3, 6 and $7^2$ filed by the Underwriter Defendants, plus all references to or hearsay statements derived from any of these documents. Plaintiffs contend that these documents cannot be considered on a motion to dismiss because Defendants did not request the Court to take judicial notice of them, they are not authenticated, they are not referenced in or integral to Plaintiffs' Complaint, and they are offered to prove affirmative defenses on matters alleged in the Complaint.

Defendants disagree, specifically move for judicial notice of certain of the alleged offending documents, and have filed Affidavits concerning authentication of certain of the alleged offending documents.

---

[2] Based upon the descriptions of the alleged offending exhibits (Docket No. 151, p. 4), it appears that Plaintiffs actually seek to strike Exhibits 3, 7 and 8 of the Underwriter Defendants.

4

The general rule is that courts are prohibited from considering matters outside the pleadings in ruling on a motion to dismiss and must confine their analysis to the four corners of the complaint. Courts may also consider other materials, however, if those materials are integral to the complaint, matters of public record, or otherwise appropriate for the taking of judicial notice. In re Unumprovident Corp. Securities Litigation, ___ F. Supp. 2d ___, 2005 WL 2206727 at * 8 (E.D. Tenn. Sept. 12, 2005).

When deciding a motion to dismiss a claim for securities fraud, a court may consider the contents of relevant public disclosure documents which are required to be filed with the Securities and Exchange Commission ("SEC") and are actually filed with the SEC. Lovelace v. Software Spectrum Inc., 78 F.3d 1015, 1018 (5th Cir. 1996). Such documents should be considered only for the purpose of determining what statements the documents contain, not to prove the truth of the documents' contents. Id. As noted in Unumprovident Corp.: "Although the PSLRA [Private Securities Litigation Reform Act] imposes heightened pleading requirements in securities cases and limits the scope of inferences to which plaintiffs are typically entitled in the face of a Rule 12(b)(6) motion, it does not convert such a motion into some sort of preliminary summary judgment motion in which the parties compare their respective collections of supporting facts and inferences." 2005 WL 2206727 at * 11.

Rule 201 of the Federal Rules of Evidence permits a court to take judicial notice of facts that are not subject to reasonable dispute in that they are either generally known within the territorial jurisdiction of the trial court or capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b).

The Court GRANTS Plaintiffs' Motion to Strike all alleged offending documents except Appendix 14, the Bristol West Holdings 2004 10-K. The Court DENIES Defendants' Motion for Judicial Notice except for Appendix 14 (the Bristol West Holdings 2004 10-K).

The Court is taking judicial notice only of the existence of the Bristol West Holdings 2004 10-K and the specific statements and/or allegations contained therein. It would be improper for the Court to rely upon this document to determine disputed factual issues. See Unumprovident Corp., 2005 WL 2206727 at * 8. Irrespective of whether this SEC form is integral to the allegations of the Complaint, it is subject to judicial notice under Fed. R. Evid. 201. Thus, the Court will consider it for the purpose of determining what disclosures were or were not made therein, but not as proof of the actual activities or transactions which it purports to disclose. Id. at * 10.

The Court finds that the other alleged offending documents — the February 2005 internal e-mail, the SFAC and AICPA guidelines and procedures, the Grand Jury Report, the Senate Staff Analysis and Economic Impact Statement and the PIP Impact Report, the Florida Underwriters' article, the Florida Department of Financial Services study, and the chart in Defendants' Memorandum — are documents subject to interpretation and explanation and/or offered to establish facts or a factual context for Defendants' defenses to Plaintiffs' allegations. As noted above, this stage of the litigation is not the time to compare the parties' respective collections of supporting facts and inferences.

Alternatively, even if the Court were to consider these documents, deny Plaintiffs' Motion to Strike and grant Defendants' Motion for Judicial Notice, it does not change the result below. Factual matters cannot be decided on a motion to dismiss, and the Court finds that the alleged offending documents, even if admitted, raise disputed issues of fact.

6

MOTIONS TO DISMISS

In considering a motion to dismiss for failure to state a claim on which relief can be granted, the court must accept as true all factual allegations in the complaint. Broyde v Gotham Tower, Inc., 13 F.3d 994, 996 (6th Cir. 1994). The motion should be granted only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Id.

A motion to dismiss for failure to state a claim upon which relief can be granted must be viewed in the light most favorable to the party opposing the motion. State of Ohio ex rel. Fisher v. Louis Trauth Dairy, Inc., 856 F.Supp. 1229, 1232 (S.D. Ohio 1994). The purpose of a motion to dismiss for failure to state a claim is to allow the defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true. Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993).

In deciding a motion to dismiss, the function of the district court is to test the legal sufficiency of the complaint. City of Toledo v. Beazer Materials & Services, Inc., 833 F.Supp. 646, 650 (N.D. Ohio 1993). The court is without authority to dismiss claims unless it can be demonstrated beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief. Id.

DIRECT GENERAL AND THE INDIVIDUAL DEFENDANTS

The "Individual Defendants" are William Adair, Tammy Adair, Barry Elkins, Jacqueline Adair, Brian Moore, Fred Medling, Raymond Osterhout, and Stephen Rohde, officers and directors of Direct General. Docket No 106.

Section 10(b) and Rule 10b-5

Direct General and the Individual Defendants argue that Plaintiffs' First Count, which alleges violations of Section 10(b) of the Exchange Act and Rule 10b-5, should be dismissed for failure to

7

satisfy the pleading requirements established by the Private Securities Litigation Reform Act ("PSLRA") and Rule 9(b) of the Federal Rules of Civil Procedure.

To satisfy the requirements of Rule 9(b), a complaint alleging fraud or misrepresentation must (1) specify the statements that the plaintiff contends were fraudulent; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent. In re Sirrom Capital Corp. Securities Litigation, 84 F.Supp. 2d 933, 939 (M.D. Tenn. 1999). The PSLRA requires that where a party alleges fraud due to misstatements of fact, that party must specify each statement and describe why the statement was misleading. Id.

Plaintiffs allege that Defendants made materially false statements and material omissions which led to Plaintiffs' damages. These Defendants contend that Plaintiffs have not adequately alleged either the false statements or the material omissions. Docket No. 107.

The Court finds that the Complaint sufficiently alleges facts to support the allegations that Defendants' statements were materially false and misleading, because of omissions and false statements, when made. Defendants argue that the alleged omissions (the information Plaintiffs believe should have been disclosed) are "soft" information only; that is, information which they had no duty to disclose because it is not objectively verifiable, but rather it consists of predictions and matters of opinion. Docket No. 107.

Plaintiffs allege, however, that Defendants knew, at the time of the relevant statements and omissions, that the FIAA would necessarily increase their exposure, require increased reserves and negatively impact their financial condition; yet, Defendants failed to disclose this information. Viewing the Complaint in the light most favorable to the Plaintiffs, the Court cannot determine whether the failure to disclose such information was "soft" information or was objectively verifiable

8

without considering it in the context of all the circumstances. On a motion to dismiss, the Court cannot weigh evidence and determine the context of all the circumstances. Rather, such an exercise is appropriate for a motion for summary judgment, with the required Statement of Undisputed Facts and supporting documents. Fed. R. Civ. P. 56; Local Rule 8(b)(7).

Defendants argue that Plaintiffs do not adequately allege material false statements, contending that Plaintiffs' claims are contradicted by undisputed facts. Docket No. 107. Defendants have not demonstrated beyond doubt that the Plaintiffs can prove no set of facts that would entitle them to relief. The Court cannot determine, on a motion to dismiss, the veracity of the alleged misstatements. And, contrary to Defendants' assertions, the allegations of Plaintiffs, if accepted as true, are plausible.

Defendants argue that beliefs about reserves are not actionable under the Securities Act. As this Court has previously found, however, if a defendant affirmatively states that a reserve is "adequate" or "solid" even though it knows that the reserves really are not adequate, it may be actionable. In re Sirrom Capital, 84 F.Supp.2d at 942. Statements of opinion by top corporate officials may be actionable if they are made without a reasonable basis.

Plaintiffs claim that Defendants made statements concerning the adequacy of the loss reserves when Defendants *knew* that those statements were false, when there was no reasonable basis therefor. Moreover, Plaintiffs contend not only that Defendants misled the public about the adequacy of Direct General's loss reserves, but also that Direct General's financial statements were false and misleading, based (at least in part) on the inadequate reserves. By addressing the quality of a particular management practice, a defendant declares the subject of its representation to be material to the reasonable shareholder and thus is bound to speak truthfully. In re Sirrom Capital,

9

84 F.Supp.2d at 942. Whether the statements made by Defendants are true or false is not an issue to be decided on a motion to dismiss. A court may not grant a Rule 12(b)(6) motion based upon disbelief of a complaint's factual allegations. Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 360 (6th Cir. 2001).

Plaintiffs have sufficiently particularized the time, place, content and speaker of the alleged misrepresentations and omissions and have explained why the statements and omissions were allegedly false and misleading when made. While it may well turn out, as Defendants maintain, that the contested statements and omissions were not false or misleading when considered in context, that is a determination "more appropriately made on the kind of record which a motion for summary judgment affords." In re Sirrom Capital, 84 F.Supp.2d at 942.

To support a Section 10(b) and Rule 10b-5 claim, Plaintiffs must show that Defendants acted with "scienter;" that is, with intent to deceive, manipulate or defraud. In re Prison Realty Securities Litigation, 117 F.Supp.2d 681, 686 (M.D. Tenn. 2000). Defendants assert that Plaintiffs' claims should be dismissed for failure to allege specific facts giving rise to a strong inference of fraudulent intent or scienter. Plaintiffs may plead scienter in § 10b or Rule 10b-5 cases by alleging facts giving rise to a strong inference of recklessness, but not by alleging facts merely establishing that a defendant had the motive and opportunity to commit securities fraud. Id. at 687; In re Comshare, Inc. Securities Litigation, 183 F.3d 542, 549 (6th Cir. 1999).

The Complaint alleges that Defendants knew, from before enactment of the Florida legislation, that the FIAA would have a negative impact upon Direct General's loss reserves and business, through reducing the maximum personal injury protection coverage deductible by 50% and increasing coverage by 25%, and that Defendants deliberately withheld that information from

10

the public. Whether the notice given to Defendants concerning the impact of the legislation was true, whether Defendants actually received such notice, what Defendants knew and when they knew it, whether and when Defendants had a duty to disclose the adverse information, whether the information withheld was material — all are questions which must be determined by the trier of fact (at trial or on summary judgment), who must determine the factual circumstances under which these alleged false statements and omissions were made. Once those facts are determined, the ultimate question of whether Defendants were reckless can be decided.

Plaintiffs contend that Defendants had hard evidence, in the form of specific numbers, "easily quantifiable and readily apparent," "concrete and definite," that the new law would have a negative effect on Direct General. The Court cannot determine whether those statements are true or false on a motion to dismiss. The Court finds that, based upon the information properly before the Court at this juncture, and the standards for reviewing that record, Plaintiffs have sufficiently alleged violations of Section 10(b) and Rule 10b-5 to survive a motion to dismiss.

Sections 11 and 12

Plaintiffs' Third and Fourth Claims for Relief allege violations of Sections 11 and 12 of the 1933 Securities Act. To establish a claim under Section 11, Plaintiffs need only show that they bought the securities and that there was a material misstatement or omission in the registration statement. In re Prison Realty Securities, 117 F.Supp.2d 681, 687-88. Similarly, to establish a claim under Section 12, once they have established privity with a seller, Plaintiffs need only prove that there was a material misstatement or omission in the prospectus or oral communication. Id.

Defendants argue that Plaintiffs' Section 11 and 12 claims should be dismissed because Plaintiffs have failed adequately to plead materially false statements. As discussed above, the truth

11

or falsity of the alleged statements, taking into account the alleged omissions and the context in which they were made, cannot be decided on a motion to dismiss. Defendants' arguments are more properly suited for a motion for summary judgment.

Defendants further contend that Plaintiffs' claims related to the Initial Public Offering ("IPO") Prospectus are barred by the one-year statute of limitations. Defendants assert that since the FIAA became law in July of 2003, Plaintiffs knew about the alleged omissions and false statements when the prospectus was issued on August 11, 2003. As Plaintiffs point out, however, it is not the Florida law which allegedly caused Plaintiff's harm. It is Defendants' failure to adequately and truthfully disclose the negative effects and negative impact of the law on Direct General. Plaintiffs contend Defendants knew about those negative effects even *before* the August IPO and that Plaintiffs had no reason to know about the negative impact on the company until its disclosures in January of 2005. That contention raises a factual issue as well.

Defendants argue that Plaintiffs do not have standing to assert Section 12(a) claims related to the August 2003 IPO. Defendants assert that all Plaintiffs' purchases were in 2004, well after the August 2003 IPO. Plaintiffs do not dispute this fact. Document No. 144, p. 39. Accordingly, Plaintiffs' Section 12(a) claims against Direct General and the Individual Defendants related to the August 2003 IPO are DISMISSED.

Sections 20(a) and 15

Plaintiffs' Second and Fifth Claims for Relief, for violations of Section 20(a) against Direct General and the "Insider Defendants"[3] and Section 15 against Defendants W. Adair, T. Adair, J.

---

[3] The "Insider Defendants" are identified in the Complaint as W. Adair, T. Adair, J. Adair, Elkins and Moore.

Adair and Elkins, require proof that the Defendants were "controlling persons" in Direct General. In order to plead control person liability, Plaintiffs need to establish that the Defendants actually participated generally in the operations of Direct General and that Defendants possessed the power to control the specific transaction or activity upon which the primary violation is predicated. Sanders Confectionery Products, Inc. v. Heller Financial, Inc., 973 F.2d 474, 486 (6th Cir. 1992). Whether a person is a controlling person is normally a question of fact that cannot be determined at the pleading stage. Id. at 485.

Plaintiffs allege, at more than one place in the Complaint, that the "Insider Defendants" were Direct General's top officers and, because of their respective positions in the company, were each involved in the day-to-day management of Direct General. Docket No. 77, ¶¶ 36 and 169. In addition, Plaintiffs allege that the Insider Defendants controlled and/or possessed the authority to control the contents of Direct General's reports, press releases and presentations to the public and, through that power, fraudulently misled the investing public. Id., ¶ 37.

The Court finds that Plaintiffs have sufficiently alleged "control person liability" to survive a motion to dismiss. As with the other issues explained above, whether these Defendants were actually "control persons" cannot be determined at the pleading stage of the litigation.

Conclusion

For all these reasons, the Motion to Dismiss of Direct General and the Individual Defendants (Docket No. 106) is GRANTED in part and DENIED in part. Plaintiffs' Section 12(a) claims against Direct General and the Individual Defendants as to the August 2003 IPO are DISMISSED.

DEFENDANTS WILLIAM C. ADAIR, JR. TRUST AND TAMMY ADAIR, TRUSTEE

Plaintiffs' Complaint alleges that Tammy Adair, individually and as Trustee of the Adair Family Trust, violated Section 12(a) of the 1933 Securities Act. It does not specifically allege a Claim for Relief against the William C. Adair, Jr. Trust ("the Trust").

Defendants argue that the Amended Complaint against the Trust should be dismissed because it fails to allege any claim whatsoever against the Trust. Furthermore, Defendants contend that the Amended Complaint should be dismissed as to both the Trust and Tammy Adair as Trustee because it does not allege that the Trust made any false or misleading statements and it does not allege that Tammy Adair made any false or misleading statements in her capacity as Trustee.

The Complaint does not allege that the Trust made any false statements, misrepresentations, omissions or misleading statements. The Complaint, in its five Claims for Relief, does not allege that the Trust is guilty of any misconduct or is liable for anything.[4] Under the standard for determining this Motion to Dismiss, the Court finds that Plaintiffs have failed to state a claim for which relief may be granted against the Trust.

As for Defendant Tammy Adair, in her capacity as Trustee of the Trust, Defendants contend that none of the alleged misconduct of Tammy Adair was even allegedly undertaken in her capacity as Trustee. Plaintiffs contend that Adair has committed violations of securities laws acting through and on behalf of the Trust.

The only Claim for Relief alleged against Ms. Adair as Trustee is the Fourth Claim for Relief, for violations of Section 12(a)(2) of the Securities Act. Docket No. 77, ¶¶ 230-237. To establish a

---

[4] Plaintiffs' argument that a trust *can* be liable for securities violations committed by a trustee is different from the issue of whether Plaintiffs have adequately pled a cause of action against the Trust in this case.

14

claim under Section 12, Plaintiffs must prove privity with a seller and that there was a material misstatement or omission in the prospectus or oral communication. In re Sirrom Capital, 84 F.Supp.2d at 937.

Plaintiffs base their Section 12 claims on alleged untrue and misleading statements in Direct General's August 2003 Registration Statement and/or the March 2004 Registration Statement. Id., ¶¶ 231-232. Plaintiffs do not allege that any of the alleged omissions or false statements in these two Registration Statements were made or affirmed by Ms. Adair as Trustee of the Trust. See, e.g., ¶ 234. Indeed, Ms. Adair could not have made representations or taken actions with regard to Direct General's Registration Statements as Trustee of the Trust, but only as an officer and/or director of Direct General.

Therefore, the Court finds that Plaintiffs have failed to state a claim for relief against Tammy Adair as Trustee of the Trust. Nothing in this ruling limits any alleged liability of Ms. Adair in her capacity as an officer of Direct General.

For these reasons, the Motion to Dismiss of the Adair Family Trust and Tammy Adair as Trustee (Docket No. 108) is GRANTED, and all claims against these two Defendants are DISMISSED. Plaintiffs' request for leave to amend is DENIED.

## ERNST & YOUNG

Ernst & Young is the certified public accounting firm engaged to provide independent auditing, accounting and other services to Direct General. Plaintiffs allege that Ernst & Young violated Section 10(b) of the Exchange Act and Rule 10b-5 through its false and misleading statements and violated Section 11 of the Securities Act by consenting to the inclusion of false financial information in Direct General's 2003 year-end financials, which were incorporated in the

15

Registration Statement issued in connection with the March 2004 Offering of Direct General's stock. Docket No. 77, ¶¶ 151 and 223.

Ernst & Young contends that the claims against it should be dismissed because Plaintiffs have failed to allege how anything Ernst & Young stated was false and nothing in the Complaint supports a strong inference of scienter by Ernst & Young with regard to the 2003 audit opinion.

To establish a claim for damages under Section 10(b) and Rule 10b-5, Plaintiffs must show (1) the use of jurisdictional means (2) to carry out a deceptive or manipulative practice with the requisite scienter, (3) in connection with (4) the purchase or sale (5) of a security (6) causing (7) damages. In re Sirrom Capital, 84 F.Supp.2d at 939. Thus, to support a Section 10(b) and Rule 10b-5 claim against Ernst & Young, Plaintiffs must show that Ernst and Young acted with scienter; that is, with intent to deceive, manipulate or defraud. Id. at 940.

Plaintiffs have alleged, basically, that Ernst & Young should have known that the FIAA would have a negative impact on Direct General's financial statements. Unlike their allegations concerning knowledge of Direct General and its officers and directors,[5] Plaintiffs have set forth no facts to support the theory that Ernst & Young received information about how the FIAA would affect Direct General or that Ernst & Young knew that the statements it made concerning the 2003 audit opinion or anything else were false. Plaintiffs argue, with no citation to authority, that Ernst & Young had a duty to examine Direct General's financial statements and to consider whether its set asides for loss reserves were sufficient given the risk to which it was exposed. Docket No. 143, p. 16. But there are no facts alleged to show that Ernst & Young was even aware of the risk attributed

---

[5] For example, Plaintiffs have stated that "Direct General knew that the passage of the FIAA would require it to set aside sufficient reserves to account for the law's impact." Docket No. 143, p. 10.

16

to the FIAA.  There is no factual allegation of notice to Ernst & Young of the alleged effect of the FIAA upon Direct General's "bottom line."

There being no facts alleged to show that Ernst & Young knew its statements were false or misleading, Ernst & Young could not have had the required scienter to commit a Section 10(b) or Rule 10b-5 violation.[6]  Ernst & Young's Motion to Dismiss Plaintiffs' Section 10(b) and Rule 10b-5 claims is GRANTED, and those claims are DISMISSED.

With regard to Section 11, however, Plaintiffs need not show scienter.  To establish a *prima facie* Section 11 claim, Plaintiffs need only show that they bought securities and there was a material misstatement or omission.  Only when the claims alleging material misrepresentation or omission in a registration statement are grounded in fraud must the complaint state with particularity the circumstances constituting the alleged fraud.  Picard Chemical Inc. Profit Sharing Plan v. Perrigo Co., 940 F.Supp. 1101, 1115 (W.D. Mich. 1996).  Here, Plaintiffs expressly *exclude* from their Section 11 claim any allegation of fraud or intentional or reckless misconduct and rely solely upon strict liability or negligence.  Docket No. 77, ¶215.  Thus, Ernst & Young could be liable under Section 11 for innocent or negligent material misstatements or omissions.  In re Stac Electronics Securities Litigation, 89 F.3d 1399,1404 (9th Cir. 1996).

Whether the Direct General financial statements signed by Ernst & Young were false or misleading is, for the reasons set forth above, not an appropriate issue for a motion to dismiss, given the factual disputes involved.  Accordingly, Ernst & Young is not entitled to have the Section 11 claim dismissed.

---

[6]    This case is very different from Vision America, cited by Plaintiffs, where the auditor failed to disclose that Vision America had failed to pay, record and report its withholding taxes.

For these reasons, the Motion to Dismiss of Ernst & Young is GRANTED in part and DENIED in part. Plaintiffs' claims against Ernst & Young for violations of Section 10(b) and Rule 10b-5 are DISMISSED. Plaintiffs' request for leave to amend is denied.

## UNDERWRITER DEFENDANTS

Plaintiffs have sued the "Underwriter Defendants" (Keefe, Bruyette & Woods, Inc; Morgan Keegan & Company, Inc.; U.S. Bancorp Piper Jaffray; and SunTrust Robinson Humphrey) for violation of Sections 11 and 12(a)(2) of the Securities Act in connection with the offering documents for the August 2003 and March 2004 offerings.

The Underwriter Defendants argue that Plaintiffs have failed to state a claim against them because Plaintiffs have not identified anything misleading in Direct General's offering documents and because neither Lead Plaintiff has standing to assert a Section 12 claim based upon the August 2003 offering.

The Underwriter Defendants contend, as did Direct General and the Individual Defendants, that the disclosures of Defendants were not false or misleading, particularly taken in context.[7] As stated above, on a motion to dismiss, the Court cannot look at the totality of the circumstances or determine the factual context in which the allegations arose. Defendants' arguments are more properly suited to a motion for summary judgment, after adequate time for discovery.

As noted above, on a Section 11 claim, Plaintiffs need not show that the Underwriter Defendants knew their statements were false or misleading. As with Ernst & Young, factual disputes

---

[7] The Underwriter Defendants encourage the Court to look at the "overall purpose" of the statute, and they argue that misrepresented or omitted facts are "material" if a reasonable investor would have viewed them as having significantly altered the "total mix" of information made available. These tasks inherently involve issues of fact.

18

require that the Underwriter Defendants' Motion be denied as to the Section 11 claims. The time for resolving factual disputes comes later, after the opportunity for discovery and development of a factual record.

Plaintiffs have conceded that they cannot sustain Section 12 claims against the Underwriter Defendants based on the August 2003 offering, and those claims are dismissed.

For these reasons, the Underwriter Defendants' Motion to Dismiss is GRANTED in part and DENIED in part. Plaintiffs' Section 12 claims against the Underwriter Defendants based on the August 2003 offering are DISMISSED.

## MOTIONS FOR HEARING/ORAL ARGUMENT

The parties' Motions for Hearing/Oral Argument (Docket Nos. 137 and 148) are DENIED as moot.

## CONCLUSION

For the reasons stated herein, the Motion to Dismiss of Defendant Direct General Corp. and the Individual Defendants (Docket No. 106) is GRANTED in part and DENIED in part; the Motion to Dismiss of Defendants William C. Adair, Jr. Trust and Tammy Adair, Trustee (Docket No. 108) is GRANTED; the Motion to Dismiss of Defendant Ernst & Young, LLP (Docket No. 130) is GRANTED in part and DENIED in part; the Motion to Dismiss of the Underwriter Defendants (Docket No. 133) is GRANTED in part and DENIED in part; the Motion for Hearing of Underwriter Defendants (Docket No. 137) and the Motion for Oral Argument of Lead Plaintiffs (Docket No. 148) are DENIED as moot; the Motion to Strike of Lead Plaintiffs (Docket No. 150) is GRANTED in part and DENIED in part; and the Motion by Defendant Direct General and the Individual Defendants for Judicial Notice (Docket No. 164) is GRANTED in part and DENIED in part.

19

Plaintiffs' claims against the William C. Adair, Jr. Trust and Tammy Adair in her capacity as Trustee are DISMISSED. Plaintiffs' Section 12 claims related to the August 2003 IPO are DISMISSED. Plaintiffs' Section 10b and Rule 10b-5 claims against Ernst & Young are DISMISSED.

IT IS SO ORDERED.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE

20