IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| In re: DIRECT GENERAL CORP. SECURITIES LITIGATION | ) <br> ) NO. 3:05-0077 <br> ) JUDGE CAMPBELL <br> ) <br> ) |

MEMORANDUM

Pending before the Court is Lead Plaintiffs' Motion for Class Certification (Docket No. 196). The Court heard argument on the Motion on July 31, 2006.

For the reasons stated herein, Lead Plaintiffs' Motion for Class Certification (Docket No. 196) is GRANTED.

FACTS

Plaintiffs seek class certification of this securities action pursuant to Fed. R. Civ. P. 23. The proposed class is all purchasers of the securities of Direct General Corporation ("Direct General") between August 11, 2003 and January 26, 2005, inclusive, including those who purchased shares of Direct General common stock issued pursuant to or traceable to Direct General's August 11, 2003 Registration Statement/Prospectus for Direct General's August stock offering, and Direct General's March 23, 2004 Registration Statement/Prospectus for Direct General's March stock offering, seeking to pursue remedies under the Securities Act of 1933 and the Securities Exchange Act of 1934.[1]

---

[1] The Defendants are Direct General Corporation, the officers and directors of Direct General ("Individual Defendants"), the top officers of Direct General ("Insider Defendants"), Ernst & Young, and the co-lead underwriters of the stock offerings at issue herein ("Underwriter Defendants").

Plaintiffs allege that Fed. R. Civ. P. 23(a) is satisfied because the class is sufficiently numerous to make joinder impracticable, there are questions of law and fact common to the class, the claims and defenses of Plaintiffs are typical of the class, and Plaintiffs will fairly and adequately protect the interests of the class. In addition, Plaintiffs assert that the class should be certified under Fed. R. Civ. P. 23(b)(3) because questions of law or fact regarding the class predominate over any issues affecting individual class members and a class action is superior to other available methods for the fair and sufficient adjudication of the controversy.[2]

All Defendants object to class certification. Defendant Ernst & Young contends that Plaintiffs' proposed class is impermissibly broad because the one claim remaining against it is brought pursuant to Section 11 and involves only the March 23, 2004 "Secondary Offering." Ernst & Young also argues that any common issues of law or fact do not predominate over the individual "tracing" issues and that Lead Plaintiffs are not representative of the class members because they have no standing under Section 11 to bring their claims.

The Direct General Defendants assert that individual questions about reliance predominate over common questions of law or fact and that the claims of Plaintiff Structural Ironworkers are not typical of the class members' claims because Structural Ironworkers did not rely upon the integrity of the market in purchasing its shares. The Direct General Defendants also claim that any class should exclude shareholders who sold on or before January 20, 2005.

---

[2] Plaintiff also asks the Court to appoint the law firm of Lerach Coughlin Stoia Geller Rudman & Robbins LLP as Lead Class Counsel and the law firm of Barrett, Johnston & Parsley as Liaison Class Counsel. This request is unopposed.

2

The Underwriter Defendants contend that Lead Plaintiffs have no standing as to the Section 11 or the Section 12 claims and that individual traceability issues predominate over any common questions of law or fact, thus precluding class certification under Rule 23(b)(3).

## CLASS ACTIONS

Before a case can be certified as a class action, it must satisfy both Rule 23(a) and Rule 23(b) of the Federal Rules of Civil Procedure. Rule 23(a) establishes four requirements for class certification: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of those of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

Rule 23(b) authorizes a class action when (1) questions of law or fact common to the class predominate over questions affecting only individual members; and (2) a class action is superior to other available methods for the fair and sufficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

A court's decision to certify a class must be based on a "rigorous analysis" of the particular facts of the case. General Telephone Co. of Southwest v. Falcon, 102 S.Ct. 2364, 2372 (1982). The decision whether to certify a class, committed to the sound discretion of the district judge, turns on the particular facts and circumstances of each individual case. Ballan v. Upjohn Co., 159 F.R.D. 473, 479 (W.D. Mich. 1994).

Numerosity

The first requirement of Rule 23(a) is that the class be so numerous that joinder of all members is impracticable. There is no strict numerical test for determining the impracticability of

3

joinder. In re American Medical Systems, Inc., 75 F.3d 1069, 1079 (6th Cir. 1996). Rather, the Court must examine the specific facts of each case. Id. Plaintiffs need not demonstrate that it would be impossible to join all the putative class members; rather, they need simply show that joinder would be difficult and inconvenient. Thrope v. State of Ohio, 173 F.R.D. 483, 487 (S.D. Ohio 1997). Numerosity is generally assumed to have been met in class action suits involving nationally traded securities. Ballan, 159 F.R.D. at 479.

The Court finds that Plaintiffs have carried their burden of establishing numerosity required under Rule 23(a).

Commonality

The question of whether there are common issues of law or fact is qualitative rather than quantitative, and there need be only one single issue common to all members of the class in order to satisfy the requirement. American Medical Systems, 75 F.3d at 1080.

Plaintiffs contend that they have alleged a common course of conduct by Defendants of uniform misrepresentations and omissions to the investing public. Plaintiffs assert that those material misrepresentations and omissions artificially inflated the market price of Direct General stock, thereby injuring each proposed class member in exactly the same way.

Plaintiffs allege that the common questions include:

(1) whether the Exchange Act and Securities Act were violated by Defendants' acts and omissions;

(2) whether the documents, reports, filings, releases and statements disseminated to the Class by Defendants during the Class Period misrepresented facts about Direct General's business, performance and financial condition;

(3) whether Defendants' statements omitted material facts necessary to make those statements, in light of the circumstances under which they were made, not misleading;

4

(4) whether the market price of Direct General common stock during the Class Period was artificially inflated due to the misrepresentations complained of in the Complaint; and

(5) whether Defendants acted knowingly or recklessly in misrepresenting material facts.

The Court finds that Plaintiffs have established the necessary commonality under Rule 23(a).

Typicality

The claims of the representative parties must be typical of the claims of the class in order to meet the requirements of Rule 23(a). In other words, there must be a nexus between the class representatives' claims or defenses and the common questions of law or fact which unite the class. Taylor v. Flagstar Bank, 181 F.R.D. 509, 517 (M.D. Ala. 1998). Typicality determines whether a sufficient relationship exists between the injury to the lead plaintiffs and the conduct affecting the lead plaintiffs and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct. American Medical Systems, 75 F.3d at 1082. A plaintiff's claim is typical if it arises from the same event or practice or course that gives rise to the claims of other class members, or if his or her claims are based on the same legal theory. Id.

Plaintiffs contend that they meet the typicality requirement because their claims are based upon the same theories and will be proven by the same evidence as those of the proposed class members. Thus, Plaintiffs maintain, their interests are aligned with those of the proposed class and, in pursuing their own claims, they will advance the interests of the proposed class.

Defendants argue that Plaintiffs' claims are not typical because Plaintiffs are subject to a unique standing defense; that is, Plaintiffs lack standing to bring their claims because they cannot trace their purchases to the alleged offending registration statements. Defendants also contend that Plaintiff Structural Ironworkers is not typical because it did not rely on the integrity of the market when purchasing Direct General stock and because it has not shown that it suffered damages.

The Court finds that Defendants' standing argument does not defeat class certification. As the Court stated in its ruling on Defendants' Motions to Dismiss, the standing arguments are more properly suited to a motion for summary judgment. In addition, for purposes of class certification, the common question of whether the registration statements were materially misleading predominates over any secondary tracing issues that might be encountered later in the litigation.

As for Defendants' argument concerning Structural Ironworkers' reliance upon the decisions of investment advisors rather than upon the integrity of the market, the Court finds that such reliance, both reasonable and necessary, does not suggest that Structural Ironworkers is atypical or inadequate to protect and pursue the interests of the proposed class. See In re Vicuron Pharmaceuticals, Inc. Securities Litigation, 233 F.R.D. 421, 427 (E.D. Pa. 2006). Even if Structural Ironworkers relied upon investment advisors, those advisors relied on public information and the integrity of the market. See "fraud on the market" discussion, below.

The Underwriter Defendants have supplemented their filings to argue that, because both registered and unregistered shares were available in the market during the Class Period, thus rendering tracing impossible, Structural Ironworkers is both atypical and inadequate as a class representative. Plaintiffs, however, have alleged that Structural Ironworkers bought 1,600 shares directly in the March offering and can trace 8,300 of its shares to the Company's August Offering. Docket No. 237, p. 2. The Court must credit these allegations for purposes of this Motion.

Adequacy of Representation

6

Rule 23(a) requires that the representative plaintiffs must fairly and adequately protect the interests of the class. The Sixth Circuit has articulated two criteria for determining adequacy of representation: (1) the representatives must have common interests with unnamed members of the proposed class; and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel. American Medical Systems, 75 F.3d at 1083.

Plaintiffs argue that, for the same reasons that the elements of commonality and typicality are met, their interests are co-extensive with the interests of the unnamed proposed class members. Plaintiffs contend that in prosecuting their own claims to achieve maximum recovery, they will also be vigorously prosecuting the claims of other proposed class members and that they are willing and able to take an active role in the litigation to protect the interests of absent class members. Secondly, Plaintiffs assert that they will vigorously prosecute the interests of the class through qualified counsel who will zealously and competently represent the interests of the proposed class.

Based upon all the above findings as to the other elements, the Court finds that Plaintiffs will adequately represent the proposed class.

Predominance

Once the Court determines that an action is maintainable as a class action under Rule 23(a), it must determine whether the action is maintainable as a class action under Rule 23(b). The first requirement under Rule 23(b)(3) is predominance of common issues over individual issues. The Court must test whether the proposed class is sufficiently cohesive to warrant adjudication by representation. In re Jackson Nat. Life Ins. Co. Premium Litigation, 183 F.R.D. 217, 221 (W.D. Mich. 1998); Emig v. American Tobacco Co., Inc., 184 F.R.D. 379, 388 (D. Kan. 1998). Whether

common issues predominate is a matter left to the discretion of the district court because the determination is primarily factual. Id.

It is undisputed that proof of reliance is a part of the Plaintiffs' burden in this case. See, e.g., O'Neil v. Appel, 165 F.R.D. 479, 498 (W.D. Mich. 1996). Defendants argue that Plaintiffs cannot show that common issues of fact or law predominate over individual issues in this case because of individual issues concerning reliance. Plaintiffs, on the other hand, assert that, under the "fraud on the market" doctrine, the proposed class is entitled to a rebuttable presumption of reliance and, therefore, common issues predominate.

When a plaintiff alleges that a defendant made material misrepresentations or omissions concerning a security that is actively traded on an efficient market, thus establishing a fraud on the market, a rebuttable presumption of reliance arises. Castillo v. Envoy Corp., 206 F.R.D. 464, 468 (M.D. Tenn. 2002) (citing Basic, Inc. v. Levinson, 108 S.Ct. 978 (1988)). The fraud on the market theory rests on the assumption that in an open and developed market, dissemination of material misrepresentations or withholding of material information typically affects the price of the stock, and purchasers generally rely on the price of the stock as a reflection of its value. Id.; Freeman v. Laventhol & Horwath, 915 F.2d 193, 197 (6th Cir. 1994).

The fraud on the market theory is key to the class certification issue because, without the benefit of the presumption of reliance, requiring proof of individualized reliance from each member of the proposed plaintiff class effectively would prevent Plaintiffs from proceeding with a class action, since individual issues then would overwhelm the common ones. Bovee v. Coopers & Lybrand, 216 F.R.D. 596, 603 (S.D. Ohio 2003); Basic, 108 S.Ct. at 989.

8

An initial issue here is the extent to which the Court can delve into the merits of the fraud on the market theory when considering a motion for class certification. Plaintiffs argue that the Court should not look into the strength of their fraud on the market case now because such an inquiry is not appropriate on a motion for class certification. For example, the court in <u>Vicuron Pharmaceuticals</u> declined to address the assertions that the proposed class representatives could not trace their purchases to the initial stock offering. The court stated that those claims concerned the merits of the action and, as such, were not appropriately raised to challenge class certification. <u>Vicuron Pharmaceuticals</u>, 233 F.R.D. at 425, n. 2; <u>see also</u> <u>Freeland v. Iridium World Communications, Ltd.</u>, 233 F.R.D. 40, 46 (D. D.C. 2006) ("It would be inappropriate to foreclose such Plaintiffs' resort to the class action format simply because some of their cases may be difficult to prove.")

Defendants, on the other hand, contend that the Court must take a "rigorous" look at this fraud on the market theory. Courts have held that a preliminary factual inquiry into the merits of a fraud on the market theory is permissible and even necessary in order for the court to fulfill its obligations under Rule 23. <u>O'Neil</u>, 165 F.R.D. at 496. In <u>O'Neil</u>, the court held that it could "probe behind the pleadings before coming to rest on the certification question" and consider evidence presented by the parties on the maintainability of the class action. <u>O'Neil</u>, 216 F.R.D. at 606. However, that court noted, it could *not* inquire into the merits of the claims pleaded. <u>Id</u>.

In <u>Castillo</u>, another judge of this Court held that a preliminary determination as to the *availability* or *applicability* of the presumption, which is distinct from its actual application, can be made at the class certification stage without dealing with the merits of the case. <u>Castillo</u>, 206 F.R.D. at 471. Courts recognize a special need for factual scrutiny when a putative class seeks to rely on

9

the fraud on the market theory and may require plaintiffs to make at least a facial showing that the theory will be available to them.  Bovee, 216 F.R.D. at 606.

Thus, the Court must walk a "fine line," as noted by the court in Castillo, of avoiding a finding on the merits while reviewing the availability of the presumption prior to certifying a class. See Castillo, 206 F.R.D. at 472-73; Bovee, 216 F.R.D. at 606.  The Court will limit its inquiry to a preliminary determination of whether the fraud on the market theory is available to Plaintiffs, not whether such a theory will ultimately be successful.  Id.

For the presumption of reliance to apply under a fraud on the market theory, the market for the security must be open, developed and efficient.  O'Neil, 165 F.R.D. at 500 (citing Basic, 108 S.Ct. at 992).  An open market is one in which anyone, or at least a large number of persons, can buy or sell.  Freeman v. Laventhol & Horwath, 915 F.2d 193,198 (6th Cir. 1990).  A developed market is one which has a relatively high level of activity and frequency and for which trading information is widely available.  Id.  An efficient market is one which rapidly reflects new information in price. Id. at 199.  These terms are cumulative in the sense that a developed market will almost always be an open one, and an efficient market will almost invariably be a developed one.  Id.

A district court may consider five factors in determining whether a security was traded on an efficient market: (1) a large weekly trading volume; (2) the existence of a significant number of reports by securities analysts; (3) the existence of market makers and arbitrageurs in the security; (4) the eligibility of the company to file an S-3 Registration Statement; and (5) a history of immediate movement of the stock price caused by unexpected corporate events or financial releases. Cammer v. Bloom, 711 F.Supp. 1264, 1286-87 (D. N.J. 1989) (cited in Freeman, 915 F.2d at 1990); O'Neil, 165 F.R.D. at 500-501.

10

Plaintiffs have filed the Declarations of Scott D. Hakala to support their contention that Direct General's stock was traded in an efficient market. In addition, Plaintiffs note that Direct General stock traded on the Nasdaq, which is a recognized efficient market. See, e.g., Freeman, 915 F.2d at 199; Bovee, 216 F.R.D. at 606.

Defendants attack the credibility of Mr. Hakala's conclusions. The Court need not accept Mr. Hakala's conclusions uncritically, but it must determine whether the evidence is so flawed as to be inadmissible as a matter of law. Bacon v. Honda of America Mfg., Inc., 205 F.R.D. 466, 470 (S.D. Ohio 2001); In re Initial Public Offering Securities Litigation, 227 F.R.D. 65, 111 (S.D. N.Y. 2004). For purposes of class certification, the Court cannot to say that Mr. Hakala's testimony is so flawed as to be inadmissible as a matter of law. In addition, for purposes of class certification, the Court finds that Plaintiff has sufficiently shown the Cammer factors as to the availability of the fraud on the market theory.

Based upon Mr. Hakala's Declarations and the Consolidated Amended Complaint (Docket No. 77), the Court is satisfied that Plaintiffs have established, for purposes of the Motion for Class Certification, that the fraud on the market theory will be available to them. Therefore, the common questions of law or fact predominate over individual issues sufficiently to certify a class.

Superiority

The Court must also determine whether a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Fed. R. Civ. P. 23(b)(3). Plaintiffs contend that class actions are particularly appropriate means for resolving securities fraud litigation. This Court agrees. Plaintiffs have carried their burden of showing that a class action is superior to other methods of adjudicating this dispute.

11

Scope of the Class

Defendants argue that the Court should exclude any shareholders who sold before the January 26, 2005 "disclosure" of the alleged fraud; in other words, exclude "in and out purchasers." Determinations of causation and the extent of loss, if any, however, are not appropriate inquiries on a motion for class certification. Even if the causation link and/or the loss may be difficult to define as this litigation proceeds, nonetheless, for purposes of class certification, Plaintiff's allegations are sufficient.

## CONCLUSION

For all the above reasons, Lead Plaintiffs' Motion for Class Certification (Docket No. 96) is GRANTED, as set forth in the accompanying Order.

IT IS SO ORDERED.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE